Gino **RICCIOTTI**

v.

**WARWICK SCHOOL COMMITTEE.**
**Civ. A. No. 4379.**

United States District Court,
D. Rhode Island.

Nov. 6, 1970.

Timothy J. McCarthy, Providence, R. I., for plaintiff.

Robert C. Hogan, Asst. City Solicitor, City of Warwick, Warwick, R. I., for defendants.

## OPINION

PETTINE, District Judge.

This action is before the court upon defendants' motion to dismiss the

complaint for lack of subject matter jurisdiction. Defendants have complied with Fed.R.Civ.P. 12(b) (1), which requires this defense to be presented by motion, prior to the filing of an answer. Therefore, the present state of the record demands that the uncontroverted facts contained in the complaint be taken as true, for the purpose of ruling upon this motion, and as to the facts taken in their entirety, plaintiff has the burden of proving this court's jurisdiction. See Wright & Miller, Federal Practice and Procedure, § 1363 at 653 nn. 67–69, and cases cited therein.

The facts as pleaded alleged that plaintiff is a Rhode Island resident and has been a certified teacher in the Rhode Island public schools for ten years. Named as party defendants are the Warwick School Committee and each of its members. Plaintiff alleges that he entered into a contract of employment with defendants as a member of the teaching staff of the Warwick School Committee for the period February 1, 1969 to January 31, 1970. Pursuant to Article V of that contract, defendants issued a "Notice of Vacancies," soliciting applications for two so-called "promotional positions" at Gorton Junior High School (hereinafter, "Gorton"), which school is under defendants' jurisdiction. Only one of those positions is relevant to the disposition of this motion, however—that of Science Department Head. It appears that plaintiff applied for that position on April 23, 1969, was interviewed by an evaluation committee appointed by defendants and was officially appointed on June 4, 1969. His contract covered the period from September 1969 to June 1970 and provided for a salary of $12,000.

On April 17, 1970 plaintiff and defendants signed a new contract calling for plaintiff's identical services as Science Department Head at "Gorton" for the school year commencing September 1970 and ending June 1971, at a salary of $13,244. However, in June 1970, plaintiff was notified of his assignment to Aldrich Junior High School as a teacher in the science department at a salary of $11,500 for the 1970–71 school year.

It further appears from the complaint that Science Department Heads at two other junior high schools under defendants' jurisdiction were appointed simultaneously with plaintiff's appointment, although without his knowledge. An unsuccessful applicant for one or more of the three vacancies, one Robert W. Del-Giudice, filed a grievance, via the Warwick Teachers Union, with the School Committee. The grievance was then submitted to an arbitration panel, which ordered plaintiff to attend a November 13, 1969 hearing of the panel. He complied with that request. Apparently the panel ruled in favor of DelGiudice, who has supplanted plaintiff as Head of the Science Department at "Gorton." This court entered a temporary restraining order by consent of counsel, adequately protecting the parties' respective rights until this court's final determination of this litigation. Plaintiff seeks relief in the form of an order reinstating him as Science Department Head at "Gorton," with full pay and benefits incident thereto, awarding him compensatory and punitive damages, and enjoining defendants from imposing future sanctions upon him for bringing this action.

■ This court's jurisdiction is invoked on two grounds:[1]

1) under 28 U.S.C. § 1331—federal question jurisdiction

2) under 28 U.S.C. § 1343(3), (4)— civil rights action, as authorized by 42 U.S.C. § 1983.

Upon the view which this court takes of defendants' motion to dismiss, I need not consider at this time whether jurisdiction of this action can be sustained on ground #1.

[1]. Plaintiff also cites 28 U.S.C. § 1392 as a basis for this court's jurisdiction, but as can be readily seen, that provision relates only to proper *venue* in an action brought against residents of different judicial districts within the same state.

42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The vehicle for enforcement of this section is 28 U.S.C. § 1343, which provides, in part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) *To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."* [emphasis added]

Defendants concede, and properly so, that jurisdiction under § 1343 is not dependent upon either diversity of citizenship or the monetary amount in question.[2] Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); cf. Caperci v. Huntoon, 397 F.2d 799 (1st Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968). Therefore, jurisdiction under § 1343

must be predicated upon the following elements:

1) deprivation of federal constitutional or statutory right, privilege or immunity

2) under color of State law, statute, etc.

See Beaumont v. Morgan, 427 F.2d 667, 670-671 (1st Cir. 1970). As to the former, plaintiff claims that his Fourteenth Amendment substantive and procedural due process rights were violated by the arbitration panel's failure to give him an opportunity to obtain an attorney to represent him at the hearing and its failure to allow him to present evidence at the hearing or to cross-examine witnesses. As to the "color of State law" element, plaintiff relies upon R.I.Gen.Laws, § 28-9.3-1 et seq. (1969), entitled "School Teachers' Arbitration Act." That Act stated, in § 28-9.3-1, that its purpose was to declare that the public policy of Rhode Island recognized the right of certified teachers to organize and bargain collectively. Section 28-9.-3-3 mandates that a city, town, or regional district school committee recognize a duly selected organization as the exclusive bargaining agent and representative of all teachers in the school system of that city, town, or regional district, whether or not a given teacher is a union member. Furthermore, the Act provides, in §§ 28-9.3-9 and 10, that unresolved disputes between a school committee and a bargaining representative may be submitted to a hearing before an arbitration panel, whose composition is set forth in the statute. Thus plaintiff contends that since this state statute provides authority for the hearing which was held and which allegedly denied him due process of law, he was denied a constitutional right "under color of State law," within the meaning of § 1343.

 The sole argument advanced by defendants as a ground for dismissal

---

2. Though I need not and do not reach these questions, I note that diversity appears clearly unavailable and a $10,000 amount in controversy seems questionable.

of plaintiff's § 1983 action is his failure to exhaust an administrative remedy provided him under the "School Teachers' Arbitration Act"—namely, the same grievance procedure which DelGiudice followed in obtaining his present position. Plaintiff contends, however, that he concededly did not resort to that procedure because it would have been a waste of time. He argues that:

1) The Warwick Teachers Union processed the grievance filed by DelGiudice, who was one of its members, and the Union could not be expected to represent as vigorously the interest of plaintiff, who is not a Union member, since a decision in his favor could displace DelGiudice from his present position. (The R.I. statute gives the Union sole and exclusive authority to process these grievances.)

2) The Union and the Committee would probably appoint the same arbitrators to act upon a grievance filed by him as they had appointed to hear the DelGiudice grievance, and their judgment, therefore, would be circumscribed by their prior decision. The third arbitrator, picked by the other two, might also be the same as before, and thus the panel would have to reverse its very recent prior decision, in order to render a decision favorable to plaintiff.[3]

It must be remembered that a finding as to the merits of this cause of action would be premature at this juncture. This court's task in ruling upon a 12(b) motion has been clearly established:

"In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Ballou v. General Electric Co., 393 F.2d 398, 399 (1st Cir. 1968). Thus, defendants' argument as to the necessity of exhaustion must be conclusive and must preclude the hearing of this complaint as a matter of law, in order for me to grant defendants' motion to dismiss. The case law under the Civil Rights Act provides a strongly contrary indication.

In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the court considered the argument that plaintiffs, Negro school children, had to exhaust a state administrative procedure for alleviating school segregation before bringing an action authorized by 42 U.S.C. § 1983. In reversing the lower court holdings that exhaustion was necessary, the Supreme Court stated:

"Where strands of local law are woven into the case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be brought in the state court. [citing cases] Thus we have stayed the hands of a Federal District Court when it sought to enjoin enforcement of a state administrative order enforcing state law, since any federal question could be reviewed when the cases came here through the hierarchy of state courts. * * *

We have, however, in the present case no underlying issue of state law controlling this litigation. * * * Nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed. For petitioners as-

---

3. It is true that these arguments are contained in a memorandum of law submitted by plaintiff in opposition to the motion to dismiss, and not in the pleadings themselves. However, this court's consideration of them seems entirely proper in light of the standard upon which a Rule 12(b) motion is considered, see Ballou v. General Electric Co., text, *infra*. See also Wright & Miller, Federal Practice and Procedure, § 1364 at 672. Furthermore, since the pleadings have not been closed, presentation of this additional material does not convert this motion into one for summary judgment, under Rule 12(c).

sert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. [citing cases] Such claims are entitled to be adjudicated in the federal courts. \* \* \*"

373 U.S. at 673–674, 83 S.Ct. at 1436–1437.

Subsequently the Supreme Court has had the opportunity to clarify *McNeese*. In Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), the Court reviewed the dismissal by a three-judge district court of a 1983 action, for failure to exhaust adequate administrative remedies. In a *per curiam* reversal, the Court noted:

"In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed. 2d 622, noting that one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to any remedy any State might have,' *id.*, at 672, 83 S.Ct. at 1435, we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy,' *id.*, at 671, 83 S.Ct., at 1435 \* \* \*"

389 U.S. at 417, 88 S.Ct. at 526.

Thus *Damico* seemed to put to rest the need for exhaustion, even of arguably adequate state remedies in § 1983 actions. Further clarification of the exhaustion doctrine in Civil Rights cases was provided in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), wherein the Court held:

"We reject appellants' argument that appellees were required to exhaust their administrative remedies prior to bringing this action. \* \* \* Decisions of this Court \* \* \* establish that a plaintiff in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, is not required to exhaust administrative remedies, where the constitutional chal-

lenge is sufficiently substantial, as here, to require the convening of a three-judge court. [citing, *inter alia*, *Damico* and *McNeese*]"

392 U.S. at 312 n. 4, 88 S.Ct. at 2131.

Thus *King* seemed to have narrowed the broad language of *Damico*. However, given a further opportunity to explain the status of the exhaustion doctrine in 1983 actions, in Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), which had been heard by a *single* District Judge, the Court stated in *dictum*[4] that, "In any event, resort to [state administrative] remedies is unnecessary in light of our decisions in [*McNeese* and *Damico, inter alia*]." 392 U.S. at 640, 88 S.Ct. at 2120.

Subsequent lower federal court decisions -evidence conflicting interpretations of the exhaustion requirement in single-judge § 1983 cases—*exhaustion required*: see, e. g., Eisen v. Eastman, 421 F.2d 560, 569 (2nd Cir. 1969), and the trilogy of cases authored by Judge Noel, Holland v. Beto, 309 F.Supp. 784 (S.D.Tex.1970), Schwartz v. Galveston Independent School District, 309 F.Supp. 1034 (S.D.Tex.1970), and Burnett v. Short, 311 F.Supp. 586 (S.D.Tex.1970); *exhaustion not required*: see, e. g., Whitner v. Davis, 410 F.2d 24, 28 (9th Cir. 1969), Reichenberg v. Nelson, 310 F.Supp. 248, 250–251 (D.Neb.1970), and James v. Ogilvie, 310 F.Supp. 661, 664 (N.D.Ill.1970). Our own Circuit Court seems not to have decided this question, but has acknowledged that "[t]his is not to say that state [administrative exhaustion] must always precede a suit for civil rights." Still v. Nichols, 412 F.2d 778, 779 (1st Cir. 1969).

■■ Nor do I today undertake to decide this difficult question, because on the view which I take of the allegations set forth in the pleadings and memoranda, that issue is not critical to the decision of the motion to dismiss which is before me. I find that plaintiff has alleged sufficient facts with sufficient particularity to raise some question in

---

4. The holding was that the state remedy being inadequate, resort to it would be futile.

this court's mind concerning the futility and/or inadequacy of resorting to the arbitration remedy provided by State law. Thus I am not convinced to a legal certainty that he had an *adequate* State remedy, and if not, then the law is clear that he did not have to resort to that remedy, cf. *Houghton, supra.* Therefore the motion to dismiss is denied. The above discussion of exhaustion is intended to serve as a skeletal framework for the assistance of counsel should the issue arise once again in the course of this litigation.