Joseph C. VALENTINO,
Plaintiff-Appellant,

v.

Michael J. HOWLETT, Secretary of
State, Defendant-Appellee.

No. 75–1538.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1975.

Decided Jan. 6, 1976.

Rehearing Denied Feb. 2, 1976.

As Amended Feb. 5, 1976.

Joan Humphrey, James O. Latturner, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Ann Sheldon, Asst. Atty. Gen., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, ADAMS * and SPRECHER, Circuit Judges.

PER CURIAM.

On December 3, 1971, while driving his own automobile, Joseph Valentino was involved in an accident with another car which resulted in damages to persons and property. Valentino carried no automobile insurance. On October 27, 1972, the Secretary of State of Illinois revoked Valentino's drivers license because Valentino was unable to post security and file proof of financial responsibility, as required by the applicable sections of the Illinois Motor Vehicle Code.[1] At the time of the accident, Valentino was employed by the American Indian Center as a school bus driver for its Head Start Program.

After his license had been suspended, Valentino sought a hearing to determine his eligibility for a restricted driver's permit.[2] The hearing was schedule for November 17, 1972, but when Valentino appeared he was informed that the Secretary of State does not issue restricted permits when a license has been suspended for failure of the operator to meet the financial responsibility requirements of the Illinois Code.

On November 21, 1972, Valentino filed suit, individually and on behalf of a class, alleging that the refusal of the Secretary of the State to issue a restricted permit to him while granting such restricted permits to persons whose licenses had been revoked for other violations of the Motor Vehicle Code, such as reckless driving or driving while intoxicated, was an arbitrary and invidious discrimination in violation of the Equal Protection Clause. Valentino requested a mandatory injunction to direct the Secretary of State to issue a permit to him, and, on behalf of the class, to require the Secretary to issue restricted driving permits to persons otherwise qualified except for the financial responsibility requirements.

Valentino filed an affidavit in support of his motion for a temporary restraining order, in which he alleged that he would lose his job if he did not get a restricted driving permit. He also stated in the affidavit that the accident in

---

* The Honorable Arlin M. Adams, Circuit Judge of the United States Court of Appeals for the Third Circuit, is sitting by designation.

1. Smith-Hurd Ill.Ann.Stat., ch. 95½, §§ 7–201 to 215 (Supp.1975). To allow a person to continue to drive for a living while uninsured violates the purpose of the financial responsibility laws, that are designed to protect the victims of accidents. If such a person were granted a restricted driving permit the next victim would not be protected either, and the state might well be in the position of condoning such a situation. *See Pollion v. Lewis*, 320 F.Supp. 1343 (N.D.Ill. (1970).

2. A restricted drivers permit would allow the holder to drive only under certain conditions, or only in specified locations. Smith-Hurd Ill. Ann.Stat., ch. 95½, §§ 6–113(a), 6–206(c)(3) (Supp.1975).

question was "my first accident in 27 years of driving and I have never received a ticket for any other moving violation." On November 28, 1972, the district court entered a temporary restraining order requiring that the permit be issued, but on December 7, 1972, the court dissolved the temporary restraining order and dismissed the case.

Valentino then filed motions to vacate the dismissal and to reinstate the temporary relief, to convene a three-judge court, and to determine the propriety of a class action. The Secretary of State filed objections to the motion to vacate the dismissal alleging that Valentino, contrary to what was stated in the affidavit, had been convicted of six moving violations in the past four years. On December 15, 1972, the district court reinstated the complaint but denied the motion for temporary relief, denied the motion to certify the matter as a class action, and denied the motion to convene a three-judge court.

Valentino then petitioned this Court for a writ of mandamus requiring that a three-judge court be convened and for an injunction allowing him a restricted driving permit pending appeal. This Court issued the writ requiring a three-judge court to be convened, and granted the injunction.

After remand, Valentino filed a motion for summary judgment, and the case was argued before the three-judge court on May 28, 1974. On October 27, 1974, Valentino's financial responsibility suspension expired and his drivers license was restored. The single district judge, in January, 1975, on his own motion, raised the issue of mootness and set a briefing schedule on that issue. In March, 1975 Valentino filed a motion to reconsider the order that had denied the class action. The single district court judge denied the motion to reconsider and on April 17, 1975 the three-judge court dismissed the case as moot.

Valentino has appealed from the order dismissing the case, contending that (1) this is a proper class action under Rule 23, and (2) the case is not moot.

## I.

The first question we must address is whether this Court has jurisdiction of an appeal from a three-judge court. 28 U.S.C. § 1253 states:

Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any [court] action, suit or proceeding required by an Act of Congress to be heard and determined by a district court of three judges.

In the past, for cases involving appeals from the grant or denial of an injunction by a three-judge court, the procedure was to appeal directly to the Supreme Court. However, in *MTM, Inc. v. Baxley*, 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975), a three-judge court had dismissed the complaint without prejudice, because, it stated, federal intervention would have been improper in view of the pendency of the state proceedings. The Supreme Court declared, 420 U.S. at 804, 95 S.Ct. at 1281:

. . . [A] direct appeal will lie to this Court under § 1253 from the order of a three-judge federal court denying interlocutory or permanent injunctive relief only where such order rests upon resolution of the merits of the constitutional claim presented below.

Here, of course, the three-judge court did not address the "merits of the constitutional claim presented below" that plaintiff was denied equal protection, since the case had been dismissed because of mootness.

To the same effect is *Gonzalez v. Automatic Employees' Credit Union*, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974). There the Supreme Court dismissed an appeal because the three-judge court had denied an injunction when it found that the plaintiff lacked standing. Gonzalez and three other plaintiffs had brought a class action in the district court attacking as unconstitutional various provisions of the commercial code and motor vehicle code gov-

erning repossession, retitling, and resale of automobiles purchased on an installment basis.

■ Consequently, we determine that this Court has jurisdiction of this appeal, and we now turn to the contentions raised by Valentino.

## II.

Valentino claims that his case meets all the requirements of Rule 23, and that therefore the district court erred in denying his motion for certification of a class action. In the complaint, Valentino defined the class as all persons in Illinois who, after an automobile accident, have had their drivers license suspended and who have grounds to apply for a restricted driving permit.

In the case at hand, the district court held that Valentino "had failed to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." It thus denied the plaintiff's motion for certification of a class. No reasons for the decision appear in the record.

■ A plaintiff has the burden of proving that a case is appropriately a class action and meets all the requirements of Rule 23. *Rossin v. Southern Union Gas Company*, 472 F.2d 707, 712 (10th Cir. 1973). Failure to meet any one of the requirements of Rule 23 precludes certification of a class. *Rutledge v. Electric Hose & Rubber Company*, 511 F.2d 668, 673 (9th Cir. 1975).

■ The Secretary of State maintains that Valentino has failed to meet the requirement of Rule 23(a)(1) that he prove the alleged class is so numerous that joinder would be impracticable, and that the district court thus acted properly in refusing to certify a class. The record here shows that the district court was not provided with any proof that the class was so numerous that joinder was impracticable. In the motion for the class action, Valentino stated only that the action was "a proper class action on all issues as appears more fully from the allegations of the complaint." But a conclusory allegation that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements of Rule 23(a)(1).[3]

Valentino takes the position that members of the class of uninsured motorists who are unable to comply with the financial responsibility laws after an accident and who have grounds on which to make application for a restricted permit would be comprised of persons who operate a motor vehicle in the course of employment. Such persons, he alleges, would include, by way of example, truck drivers, taxi drivers, delivery-personnel, chauffeurs, parking lot attendants, telephone and utility repairmen, and public transit drivers, as well as school bus drivers. Valentino claims that many of these jobs are low paying and would frequently be held by persons economically unable to meet the financial responsibility requirements of the Illinois Vehicle Code.

However, contrary to what Valentino may have alleged, such people, who do a great deal of employment-related driving are not necessarily low paid. Many of them are able to comply with the financial responsibility provisions by posting security. Valentino is a somewhat special case. He is a person with limited income and with nine children, who was placed in a school bus driver's job, earning a small salary at a non-profit center. Accordingly, the only class that Valenti-

---

**3.** The district court in *Williams v. Wohlgemuth*, 366 F.Supp. 541 (W.D.Pa.1973) stated:

The trouble is that we are not given any figures to justify the assertion that the class is so numerous that joinder is impracticable nor are we furnished any basis upon which to take judicial notice of the numbers involved.

\* \* \* \* \* \*

The burden was on the plaintiffs to demonstrate this and since we are left completely in the dark as to how many are involved, we will deny the class action. 366 F.Supp. 543–4.

no could purport to represent would consist of low-paid persons who drive for a living, are uninsured, have had an accident in their private vehicle, and who then are unable to comply with the financial responsibility laws, resulting in the loss of their drivers license. This would be a very small class.

■ On March 3, 1975, Valentino filed a "motion to reconsider denial of class action" in which he presented a speculative estimate of the size of the alleged class. He stated that "it is apparent that the number of members runs into the thousands of persons." Valentino's figures, however, were not supported by any official documents or reports from the office of the Secretary of State. Rather, the figures represented a conjecture from someone "in the Chicago office." Also, the figures pertain to the number of persons who may lose their licenses under the financial responsibility law. But the class at issue is much smaller than this. There are no figures relating to the number of persons who would be unable to post security at a later time, and who would qualify to apply for restricted driving permits on the ground of undue hardship.

In *DeMarco v. Edens*, 390 F.2d 836 (2d Cir. 1968), where there were ten named plaintiffs and there were at least sixteen other putative plaintiffs, the court refused to allow a class action because the plaintiffs "did not show that the members of the alleged class are so numerous as to make it impractical to bring them all before the court." [4]

Finally, it should be noted that Valentino's motion to reconsider the denial of the class action, which contained the figures in question, was not filed until March 3, 1975, approximately four months after the suspension of Valentino's driver's license had expired. By March, 1975, however, Valentino's claim was moot, and it is at least doubtful whether he could thereafter adequately represent the interest of the class, as required by Rule 23(a)(4).

## III.

Valentino contends that the case is not moot, arguing that if the district court had not erred in refusing to certify the class, the class would have obtained a legal status separate from the plaintiff, before the expiration of the plaintiff's suspension. Therefore, Valentino requests that this Court order that the action be certified as a class action to relate back to the time of the filing of the complaint, reverse the district court's holding of mootness, and then remand the case for a decision on the merits.

■ The dispute between Valentino and the Department is mooted by the return of the drivers license to Valentino. There is no longer an adversary relationship between parties having a legally cognizable interest in the outcome of the case. *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The usual rule in federal cases is that an actual controversy must exist at the various stages of appellate or certiorari review, and not simply on the date the action is initiated. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

■ There is an exception to this precept, however, that occurs in cases involving a legal issue which is capable of repetition, yet evading review. The phrase, "capable of repetition, yet evading review," means that a court will not dismiss a case on the grounds of mootness where a challenged governmental

---

4. The Court in *DeMarco* stated:

"Without deciding whether appellants have failed to prove that a class actually exists, we hold that these actions were not properly maintainable as class actions because appellants did not show that the members of the alleged class are so numerous as to make it impracticable to bring them all before the court. What evidence there is in the record as to the size of the "class" and the impracticability of joinder is pure speculation. . . ." 390 F.2d at 845.

action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit. Such cases include elections, *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); pregnancy, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); and labor strikes, *Super Tire Engineering v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

Valentino suggests that such a situation is present here. He argues that his license was suspended for two years but that the suspension expired before appellate review had taken place, and the challenged law remains on the books. Therefore, he asserts that the action of the Secretary of State is capable of repetition yet evading review. This contention, however, appears to ignore one significant fact. Valentino's suspension terminated because no civil action was filed against him during the period of two years from the date he turned in his license.[5] If a civil action were filed against a suspended licensee, the suspension would become indefinite because the typical negligence case does not come to trial for 2 or 3 years after it is filed. Under Illinois law, if the case were not settled, the plaintiff would have to obtain an adjudication of non-liability by the court[6] or pay any judgment entered against him[7] before he could regain his license. Thus, the period of suspension could run anywhere from 4 to 5 years.

Except for *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), which concerned a two-year ICC order, most of the cases to which the Supreme Court has applied the "repetition yet evading review" analysis have involved periods of one year or less. See, for example, *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (one year); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972) (nine months), and *Super Tire Engineering v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (six weeks).

The most recent decision dealing with the principle of mootness and the concept of repetition, yet evading review, is *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In *Sosna*, the plaintiff brought a class action challenging a one-year residency requirement for a divorce. By the time the case reached the Supreme Court, the plaintiff had satisfied the residency requirements and had also obtained a divorce in another state. The Supreme Court, however, ruled that the case was not moot because of the one-year time period. Even though the case was no longer alive for the named plaintiff, the Court stated, it remained alive for the class of persons she was certified to represent. The Supreme Court declared: "We believe that a case such as this, in which . . . the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of controversy as to the named plaintiffs." 419 U.S. at 401, 95 S.Ct. at 558. But the Court then went on to state:

> We note, however, that the same exigency that justifies this doctrine serves to identify its limits. *In cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation.* (Emphasis supplied) 419 at 402, 95 S.Ct. at 558.

■ Since the suspension of a drivers license under the Illinois financial responsibility law can last for as long as four or five years, this case is not one which is capable of repetition, yet evad-

---

**5.** Smith-Hurd Ill.Ann.Stat., ch. 95½, § 7–211(2) (Supp.1975).

**6.** *Id.* § 7–207.

**7.** *Id.* § 7–209 (1971).

ing review. Inasmuch as Valentino did not have standing at the time the three-judge court dismissed the case, the cause had become moot.

Valentino also argues that even though the suspension of his license expired, the Secretary of State continues to enforce the prohibition against restricted driving permits to persons unable to deposit the security necessary to satisfy potential claims for damages arising from a past accident. Citing *Super Tire Engineering v. McCorkle* and *Sosna v. Iowa*, Valentino contends that this fact should allow a court to decide the case. In both *Super Tire* and *Sosna*, however, the language relating to the continuing government action was in the context of an issue that was capable of repetition, yet evading review. Thus, the Supreme Court in *Sosna* said:

> In this sense the case before us is one in which state officials will undoubtedly continue to enforce the challenged statute and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a law suit to its conclusion.

To the same effect is *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), in which six plaintiff-students, for themselves and a class, obtained an injunction in the district court against the enforcement of a school board regulation that interfered with the publication of a student newspaper. By the time the case reached the Supreme Court, the named plaintiffs had been graduated. The Supreme Court first declared that a controversy no longer existed between the named plaintiffs and the School Board with respect to the validity of the rule at issue. The Court went on to say that the case was moot unless it was duly certified as a class action and the issue in controversy is capable of repetition, yet evading review. The Court then said that since there had been inadequate compliance with Rule 23(c), the case had become moot. It is quite significant insofar as the present case is concerned that the error that prevented compliance with Rule 23 in *Jacobs* had been committed by the district court and not by the plaintiffs.

IV.

The district court did not err in refusing to certify the class on the basis of the record then before it, and with the case in such posture it did not err in dismissing this action as moot. The judgment of the district court is, therefore, affirmed.