David V. REYNOLDS, Plaintiff,

v.

Michael DUKAKIS et al., Defendants.

Civ. A. No. 75–5109–J.

United States District Court,
D. Massachusetts.

Nov. 9, 1977.

Harry L. Miles, Amherst, Mass., for plaintiff.

Thomas R. Kiley, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This is a civil action brought for the purpose of obtaining a judicial declaration that certain sections of the laws of the Commonwealth of Massachusetts, particularly Massachusetts General Laws, Chapter 4, Section 7(43), violate rights secured to plaintiff under the First, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 1983 and 10 U.S.C. §§ 1162 and 1163. Plaintiff also seeks a declaration that this action should proceed as a class action on behalf of a class of persons, male or female, whose last discharge or release from service during the Vietnam war was under honorable conditions, who served in the Army, Navy, Coast Guard or Air Force of the United States for not less than ninety days active service, at least one day of which was for wartime service, as defined in Mass.Gen.Laws c. 4, § 7(43), and who was designated as a conscientious objector upon his or her discharge or release from the armed forces.

The respondents are the Governor of the Commonwealth, the Adjutant General of the Commonwealth, the Military Archivist of the Commonwealth and the Chancellor of the Board of Higher Education.

Plaintiff seeks a Court order to the effect: (1) that Mass.Gen.Laws c. 4, § 7(43), is facially violative of the First, Fifth and Fourteenth Amendments; (2) that he and the members of the class he purports to represent be classified as veterans under the laws of the Commonwealth; (3) that respondents be enjoined from failing to certify plaintiff or any member of his class as veterans upon request; and (4) that plaintiff recover attorneys fees and costs.

On the basis of plaintiff's application therefor, a statutory three-judge Court was convened pursuant to 28 U.S.C. § 2281, *et seq.* The matter came before the three-judge Court on the basis of defendants' motion to dismiss and defendants' motion for a ruling that a class action is unwarranted herein. The matter has been briefed and orally argued by the parties.

There appears to be no factual dispute between the parties herein and the following facts are taken by this Court as being true for the purpose of this ruling.

David Reynolds is a United States citizen who resides in the town of Montague, Massachusetts. He entered on active duty at the Coast Guard Officer Candidate School in Yorktown, Virginia, on February 9, 1969. He received a commission as a Coast Guard ensign in June of that year at which time he agreed to serve on active duty for five years.

Mr. Reynolds served approximately three years and nine months as an operational helicopter pilot, and on September 9, 1972 he applied to the Commandant of the Coast Guard, through channels, for a discharge as a conscientious objector. He performed all assigned duties, both before and after filing the application, but was assigned only noncombatant duties after so doing.

On June 1, 1973, after serving almost four and a half years in an active duty status, he was granted an honorable dis-

charge as a conscientious objector. He then returned to his residence in Massachusetts, where he sought to further his undergraduate education at the University of Massachusetts at Amherst, where he was accepted as a candidate for a degree of Master of Science in marine biology. He applied to the Military Division, Adjutant General's Office, War Records Section, for a certification that he was a Vietnam veteran, in order to obtain a tuition waiver from the University of Massachusetts under the provisions of Chapter 601 of the Acts of 1966 as amended by Chapter 480 of the Acts of 1968 and Chapter 654 of the Acts of 1973. In September of 1973 he also applied for, and received, educational benefits provided by the federal government to Vietnam veterans under the Veterans Readjustment Benefits Act of 1966, 38 U.S.C. §§ 1651–1687.

On September 26, 1973, despite qualifying for federal benefits, Mr. Reynolds received a letter from Robert E. Feeney, Military Archivist of the Commonwealth, advising him that the Adjutant General's Office could not certify him as a veteran because of the provisions of Mass.Gen.Laws c. 4, § 7(43) (1976), which provides in pertinent part "Any person who was designated as a conscientious objector upon his last discharge or release from the armed forces of the United States" shall not be deemed a "veteran" under Massachusetts law. Mr. Feeney's letter also advised plaintiff that he did not meet the eligibility requirements for the tuition exemption requirements under the Massachusetts statute, although the final decision as to the exemption was to be made by the State Department of Education.

The University of Massachusetts billed plaintiff $350 for tuition for the semester beginning in the Fall of 1973, and on April 12, 1974 the University of Massachusetts threatened to dismiss plaintiff because of his failure to pay tuition. On November 1, 1975 he withdrew from the University of Massachusetts and took a job as a saw mill operator. Subsequent to filing of the complaint herein, plaintiff was severely injured during August of 1976 when the force of the winds of Hurricane Belle toppled a tree which in turn caused him to suffer a crushed vertebra, fractured skull and other injuries. The complaint has not been amended to allege that his failure to apply for medical benefits as a veteran was based on the prior ruling that he could not qualify as such under the provisions of Mass.Gen. Laws c. 4, § 7(43).

The gravamen of plaintiff's complaint is that the application to him of the provisions of Mass.Gen.Laws c. 4, § 7(43), denies him a number of those benefits which are available only to persons certified as veterans under that statute. As a consequence he argues that, because of his religious beliefs as a conscientious objector, he is being deprived of a property interest in violation of his First Amendment rights and also in violation of his Fifth Amendment right to due process. He further alleges that he is being deprived of equal protection rights because of an unconstitutional classification. It should be noted that the allegations of the complaint raise an issue only as to the denial of educational rights as a veteran. There is no allegation that plaintiff has applied for and has been denied any other rights available to veterans.

Defendants' motion to dismiss is premised on the grounds that this three-judge Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief may be granted.

We rule that, since plaintiff is seeking injunctive relief against the enforcement of a state statute which he alleges to be unconstitutional, this case was properly referred to a statutory three-judge District Court, and we further rule that this Court does have subject matter jurisdiction on the basis of 28 U.S.C. § 1331—federal question jurisdiction—and also on the basis of 28 U.S.C. § 1343—this case being a civil rights action alleged to arise under 42 U.S.C. § 1983.

We note first that, in view of the allegations of the complaint, plaintiff does not have to establish that the instant case involves a sum in excess of $10,000, and we

also note that plaintiff's alleged failure to petition under the Vietnam Veterans Tuition Exemption Program is not the type of failure to exhaust administrative remedies which would oust this Court of jurisdiction. *See Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Ricciotti v. Warwick School Comm.,* 319 F.Supp. 1006 (D.R.I.1970).

■ We next rule that the named defendants are properly before the Court because of their several official positions. The Adjutant General and the Military Archivist are officials charged with the administrative responsibility for executing the Veterans Benefits Program, including certifying or refusing to certify persons claiming to be veterans. The Governor is properly named because he is the chief military officer of the Commonwealth, and, as such, is responsible for the certifications or denials made by the Adjutant General and the Military Archivist. The Chancellor of 'the Board of Higher Education is a proper party because his action is predicated, in part at least, on certifications provided to him under the legislative scheme, and he has administrative responsibility for acting pursuant to the allegedly unconstitutional statute. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

■ With regard to plaintiff's motion that this case be declared a class action, we note that it was opposed by defendants who represent that defendants know of only nine persons in plaintiff's position who could be considered potential class members. Plaintiff has not challenged the accuracy of defendants' figure although he has had an ample opportunity to do so, if defendants' figure is statistically incorrect or otherwise deficient or inaccurate. Accordingly, we rule that plaintiff·has failed to establish the existence in fact of a class "so numerous that joinder of all members is impractical," and, thus, that plaintiff has failed to comply with the requirements of

Rule 23(a)(1) of the Federal Rules of Civil Procedure. It was plaintiff's burden to establish compliance with Rule 23. *Senter v. General Motors Corp.,* 532 F.2d 511, 520 (6th Cir. 1976); *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir. 1975); *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968); 3B *Moore's Federal Practice* ¶ 23.02–2. In view of our rather broad discretion in granting or denying a motion for the declaration of a class, *Advertising Specialty Nat. Assoc. v. FTC,* 238 F.2d 108, 119 (1st Cir. 1956); 3B *Moore's Federal Practice* ¶ 23.05, we do not propose to rest our ruling on speculation. *Valentino v. Howlett,* 528 F.2d 975 (7th Cir. 1976); *Carr v. New York Stock Exch.,* 414 F.Supp. 1292, 1305 (N.D.Cal. 1976).

It should be noted that on the present state of the pleadings we see no occasion for the granting of injunctive relief to plaintiff since it appears that he will obtain complete relief upon the entry of a declaratory judgment that he is fully qualified and eligible for the receipt of Massachusetts veterans' benefits because of the invalidity of the purported statutory exception. Accordingly, *the motion for certification of this case as a class action is denied.*

■ Turning to the merits of the constitutional claims herein, the first contention urged upon us by plaintiff is that Chapter 4, Section 7(43), as applied to him, deprives him of his right to the free exercise of religion in that it places a premium (the availability of state veterans benefits) on his waiving his right to exercise his religiously oriented conscientious objector beliefs. There is no question under prior Supreme Court decisions but that the free exercise of religion is a fundamental personal right which may be interfered with by a state law, if at all, only when the state sustains its burden of showing a "compelling state interest" requires that interference. The defendants take the position that if there is an interference with plaintiff's free exercise rights that interference is at most indirect and is of a type which the Supreme Court ruled to be permissible in *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct.

1160, 39 L.Ed.2d 389 (1974). *Johnson* was a case in which the Supreme Court ruled that denial of so-called GI educational benefits, which are available to veterans who served in the armed forces of the United States, does not violate the free exercise rights of a conscientious objector who does not enter the armed forces on active duty, does not wear the uniform, but does perform alternative civilian service. In *Johnson* the Court upheld the constitutionality of 38 U.S.C. §§ 101(2), 1652(a)(1) and 1661(a).

The facts of the instant case are substantially distinguishable from those of *Johnson* in view of plaintiff's active duty in uniform for a period in excess of four years and in view of the fact that plaintiff received a discharge which under federal law entitles him to full GI benefits. *See Appeal of Wilson, Board of Veterans Appeals,* No. 75–00–489, 3 Mil.L.Rep. 2319 (1975). In fact, in September, 1973, plaintiff Reynolds applied for and was declared eligible to receive GI educational benefits under the Veterans Readjustment Act of 1967, 38 U.S.C. §§ 1651–1697 (1959).

■ It is not necessary for this Court to resolve the difficult questions posed by the parties' opposing contentions, vis-a-vis the applicability of *Johnson v. Robison, supra,* to the facts of this case, because the instant case presents a conflict between state and federal law which was not present in *Johnson v. Robison* and which, in the opinion of this Court is of such a nature as to be dispositive of the case.

To fully appreciate the relationship between the availability of veterans rights under federal and state law to a person with the military record of plaintiff herein, it is necessary to set out in detail the present state of both state and federal law with regard to veterans benefits.

Congress has created an exemption from combat training and service for any registrant under the Selective Service laws "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." 50 U.S.C.App. § 456(j) (1968). Such registrants are eligible for induction into active military service in a non-combatant status. 32 C.F.R. § 1622.11 (1976). These registrants are classified as "1–A–O" conscientious objectors.

Still other registrants who are opposed to both combatant and non-combatant service in the armed forces are assigned to civilian alternative service. 32 C.F.R. § 1622.14 (1976). These registrants are classified as "1–O" conscientious objectors. The above-described preinduction classifications have been available for a number of years but prior to 1962 there did not appear to be in federal statutes or regulations a provision to accommodate those like plaintiff Reynolds who became conscientious objectors while on active duty in the course of serving a lengthy enlistment in a combat capacity.

In 1962 the Department of Defense established procedures pursuant to which certain service personnel who became conscientious objectors during the course of their tour of active duty could be discharged. D.O.D. 1300.6 (1962). In 1971 the Secretary of Defense promulgated uniform rules to apply to all branches of military establishments in order to recognize and effectuate the "national policy to recognize the claims of bona fide conscientious objectors in the military service." 32 C.F.R. §§ 75.2, 75.5(a) (1976). These uniform rules authorized military superiors to exercise discretion to grant requests for transfer to non-combatant duties by those service personnel who became conscientiously unable to engage in combat after entering on active duty. The discharge of such applicants was also authorized and military departments could release such persons from active duty. 32 C.F.R. § 75.7(b) (1976). The regulations also provided that persons, such as plaintiff, who became conscientious objectors and stated they were unable to participate in any capacity in the military could be discharged by their superiors for the convenience of the government with an entry in their personnel records and discharge papers noting that the reason for the separation from duty was conscientious objection. 32 C.F.R. § 75.7(a) (1976). Discharges un-

der these regulations were either honorable discharges or general discharges. The decision was largely predicated on the applicant's overall military record. At present the policy of the Department of Defense appears to be that the granting of an administrative discharge to a serviceman prior to the completion of his full term of enlistment in the service is discretionary with the head of the particular branch of military service involved. The question is to be decided by a judgment on all the facts and circumstances of the applicant's military career. However, a request for classification as a conscientious objector and relief from military duty as a result thereof is to be approved to the extent practicable and equitable insofar as so doing may be consistent with the effectiveness of the military service. 32 C.F.R. § 75.4 (1976).

It should be noted at this point that the federal regulatory scheme makes available an honorable or a general discharge as distinguished from a dishonorable discharge to those servicemen on active duty who are administratively discharged for drug abuse and unsuitability. 32 C.F.R. § 41.7(f), (g) (1976). Those classes of persons who fall under the umbrella of "unsuitability" include those discharged for personality disorder, alcohol abuse, aberrant sexual tendencies, unsanitary habits, financial irresponsibility, apathy, defective attitudes, inability to expend effort constructively, and inaptitude. 32 C.F.R. § 41.7(g) (1976). Of this latter group it also should be noted that only discharged homosexuals are not eligible to obtain federal veterans benefits. 38 C.F.R. § 3.12(d)(5) (1976).

Massachusetts General Laws Chapter 4, Section 7(43), defines veteran as "any person, male or female, including a nurse (a) whose last discharge or release from his wartime service, as defined herein, was under honorable conditions and who (b) served in the Army, Navy, Marine Corps, Coast Guard, or air force of the United States for not less than ninety days active service, at least one day of which was for wartime service, . . . ." The definitional section goes on to specifically exclude certain individuals from the definition of "veteran." It provides:

None of the following shall be deemed to be a "veteran";

(a) Any person who at the time of entering into the armed forces of the United States had declared his intention to become a subject or citizen of the United States and withdrew his intention under the provisions of the act of Congress approved July ninth, nineteen hundred and eighteen.

(b) Any person who was discharged from the said armed forces on his own application or solicitation by reason of his being an enemy alien.

(c) Any person who was designated as a conscientious objector upon his last discharge or release from the armed forces of the United States.

(d) Any person who has been proved guilty of wilful desertion.

(e) Any person whose only service in the armed forces of the United States consists of his service as a member of the coast guard auxiliary or as a temporary member of the coast guard reserve, or both.

There is no legislative history available which reveals why the Massachusetts General Court decided to define veteran in such a way as to exclude those who were designated conscientious objectors at the time of their last discharge from the armed services. A clue to the legislative intent, however, may exist in the fact that Section 7(43) was added to Chapter 4 in 1954. At that time veterans' benefits were also denied to conscientious objectors under federal law so that the enactment of Section 7(43) brought state law into harmony with the federal treatment of persons who were discharged from the national military service on the grounds of conscientious objection. At the present time it is obvious that the Massachusetts law, which, by denial of veterans' status to a conscientious objector, precludes him from eligibility from applying for a large number of veterans' bene-

fits[1] is clearly at cross purposes with the federal statutory scheme which now places no sanctions on a person in service becoming a conscientious objector during the course of a tour of active duty.

Under the existing dual system of government in this Country, it is the Congress which has the power "[t]o raise and support Armies" and "[t]o make all Laws which shall be necessary and proper for carrying into Execution" that power. In the exercise of the power to raise and support armies, Congress and the Department of Defense, acting as its delegate in promulgating regulations and directors, has determined that the national military policy is "to recognize the bona fide conscientious objectors in the military service." 32 C.F.R. § 75.5(a). To this end the Defense Department has established a mechanism described above which permits a person on active duty to either obtain a substantial change in the nature of his duties from combatant to non-combatant or to obtain a discharge if he develops a bona fide conscientious objector status in the military. If that individual follows the established procedures and obtains a discharge under federal law he remains eligible for all benefits awarded by the federal government to honorably discharged veterans. It has been suggested that the congressional rationale for providing for these administrative discharges to in-service conscientious objectors "represent[s] a purely practical judgment that religious objectors, however admirable, would be of no more use in combat than many others unqualified for military service." *Welsh v. United States,* 398 U.S. 333, 369, 90 S.Ct. 1792, 1812, 26 L.Ed.2d 308 (1970) (White, J., dissenting). The apparent purpose is to limit military service to those prepared to undertake and provide the quality of service that the armed forces demand. Arguably, discharging conscientious objectors leads to a healthier military establishment since each serviceman realizes that his personal rights will be respected should his religious beliefs change into conscientious objection during his tour of duty. Likewise, in-service harmony may well be promoted since the natural tensions between active servicemen and conscientious objectors in uniform is eliminated by the implementation of a system providing for the orderly discharge of such in-service conscientious objectors.

When a state legislature undertakes to enact legislation, the effect of which would be to frustrate the congressional intention and to produce results diametrically opposed to those sought by the federal law, the state legislation must give way. This is particularly, true where, as here, there has been no intimation of a present or any future interest approaching a compelling state interest. *See King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Penn Dairies, Inc. v. Milk Control Comm'n of Pennsylvania,* 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943).

When, in 1954, Massachusetts first enacted the above quoted provisions of Chapter 4, Section 7(43), the policy reflected thereby was totally in accord with the then prevailing federal policy as evidenced by the United States statutes which failed to afford a discharge procedure under which in-service conscientious objectors could obtain an honorable discharge and attendant federal veterans' benefits. Both the state and federal government prior to 1962 apparently regarded conscientious objectors who claimed to have developed that state of

1. The preferences accorded to veterans by the Commonwealth of Massachusetts include educational benefits, including exemption from various tuitions at state educational institutions, M.G.L.A. c. 15 § 39, c. 69 §§ 7, 7A, 7B, c. 73 § 8A; employment preference via the civil service selection scheme and otherwise, M.G. L.A. c. 16 § 4, c. 22 § 9O, c. 31 § 23, c. 41 §§ 112, 112A, c. 81 § 30, c. 149 § 26; certain retirement benefits, M.G.L.A. c. 32 §§ 52, 53, 56–58B; tax preferences, M.G.L.A. c. 59 § 5; exemptions from license fees, M.G.L.A. c. 101 § 24, c. 175 § 167A; exemption from motor vehicle registration fees, M.G.L.A. c. 90 § 33; preferences for certain low rent and state-funded housing projects, M.G.L.A. c. 121B §§ 27, 32(f), 34; license examination preferences, M.G.L.A. c. 112 § 87zz, c. 142 § 4; health care preferences, M.G.L.A. c. 118E § 10(7); burial preference, M.G.L.A. c. 114 § 46A; and the general Veterans' Benefits statute, M.G.L.A. c. 115 §§ 1, *et seq.*

mind while on active duty to be disruptive forces, as a consequence of which the punitive measure of denial of veterans' benefits was applied. 43 Stat. 1303 (March 4, 1925); 40 Stat. 609 (1918). A vestige of this policy still is in effect in the provisions of 38 U.S.C. § 3103(a) which denies veterans' benefits to a person on active duty who refuses to obey lawful orders or refuses to wear the uniform. Now that federal policy is changed, as indicated above, and protects free exercise rights of servicemen on active duty without any attendant loss of status or any loss of veterans' benefits, a state cannot constitutionally continue to withhold veterans' benefits from such persons who avail themselves of the federally-provided opportunity to exercise their religious beliefs. *See Morales v. Minter,* 393 F.Supp. 88 (D.Mass.1975).

We should note in passing that there appears to be a serious equal protection problem in a statute, such as Section 7(43), which withholds veterans' benefits from a person who exercises what the federal authorities have, at least by implication, found to be a free exercise right, while that same statute does not withhold those same veterans' benefits from persons found by the military service to be, *inter alia,* persons who abuse alcohol or have aberrant sexual tendencies, unsanitary habits or financial irresponsibility.

▮ Finally, plaintiff is entitled to his costs, including reasonable counsel fees. Counsel for plaintiff is directed to file within thirty days from the date hereof an affidavit establishing with specificity both the amount claimed for counsel fees and a detailed accounting of the time spent by him working on this case.

Accordingly, we rule that, because of the direct conflict between the state policy evidenced by Section 7(43) and the federal policy described above, Section 7(43) may not be enforced. An order will be entered embodying the above rulings.

ALDRICH, Senior Circuit Judge (concurring).

Although I concur entirely in Judge Caffrey's opinion, I think that Equal Protection as an independent ground for invalidating the statutory exclusion deserves more exposition. I agree with our dissenting brother that the test is simply whether there could be found a rational basis for distinguishing between C.O.'s who receive absolute discharges after performing the requisite minimum of service, and all other groups or classes that receive veteran's benefits in spite of not completing their term, but I cannot agree with his conclusion. Briefly, the classifications are,

1. A serviceman who becomes a 1–O conscientious objector, requests and receives an absolute discharge, 32 C.F.R. §§ 75.3(a)(1), 75.7(a) (1976), and cannot qualify under the Massachusetts statute.

2. A serviceman who becomes a 1–A–O conscientious objector, and requests a transfer to noncombatant service. 32 C.F.R. §§ 75.3(a)(2), 75.7(b) (1976). It is to be noted that this serviceman qualifies for Massachusetts benefits even if the Service chooses, as it may, to discharge him immediately, because in such event his papers will not be marked C.O.

3. A serviceman who is discharged for "unsuitability," 32 C.F.R. § 41.7(g) (1976), and qualifies. Unsuitability includes alcohol abuse, aberrant sexual tendencies, unsanitary habits, financial irresponsibility, apathy, and defective attitudes.

While it has been suggested that all grounds listed under unsuitability are "beyond the serviceman's control," Jones, B. K., The Gravity of Administrative Discharges: A Legal and Empirical Evaluation, 59 Military L.Rev. 1, 4 (1973), I cannot but think that some of the above listed behavior and shortcomings involve a very considerable degree of voluntariness, if not willfulness. Certainly some seem no less voluntary than is the holding of conscientious objection to war.

I can attach no significance to the circumstance adverted to in the dissent, that the 1–O serviceman who reports his condition to the Service initiates his discharge, while a serviceman who persists in, say,

unsanitary habits, will be discharged without affirmatively requesting it. Other types of early discharge are initiated by the serviceman without incurring prejudice—it depends upon the circumstances. Given the depth of his beliefs and the opportunity to follow them, a 1–O conscientious objector would necessarily take such a course. In suggesting that he might, instead, apply for noncombatant service, the dissent appears not to recognize that there are, in their beliefs, degrees of conscientious objection. A true 1–O, having a "firm, fixed and sincere objection to participation in war in any form. . . . " 32 C.F.R. § 75.3(a), differs from a 1–A–O, and by hypothesis, could not conscientiously undertake 1–A–O duties. Thus he must ignore his conscience, or forego benefits.

I quite agree that a state, in rewarding service in the armed forces, is not obliged to be as generous, or all-inclusive, as is the federal government. However, it cannot be arbitrary as between individual citizens. I see no basis, when the requisite amount of service has been performed by each, for distinguishing, in the latter's disfavor, between one who obtains a discharge by persisting in various forms of anti-social behavior and one who follows accepted views of conscientious belief.

JULIAN, Senior District Judge (dissenting):

I disagree with the majority's conclusion that M.G.L. c. 4, § 7(43), is unconstitutional. The holding that the Massachusetts statute cuts at cross purposes with the federal law rests, in part at least, on the premise that administrative discharges for conscientious objectors are allowed because, in the military's judgment, conscientious objectors are unqualified or unsuitable for military service. I find no justification for this premise. The plaintiff does not claim that he became unqualified or unfit for military service because of his conscientious objection; nor is there any indication in the record that he did. There has been no finding, ruling or declaration by the Defense Department or any other governmental agency that conscientious objectors are unqualified or unsuitable for military service. No judicial decision has been found holding that conscientious objection renders a person unqualified or unsuitable for military service.

On the contrary, the Defense Department has provided by regulation that a conscientious objector may continue to serve in the armed forces in a noncombatant capacity, see 32 C.F.R. § 75.7(b), and it is commonly known that conscientious objectors have served well in such capacities. Furthermore, conscientious objectors are not included in the enumeration of "unsuitable" servicemen in the regulations. 32 C.F.R. § 41.7(g).

The majority also rests its ruling that M.G.L. c. 4, § 7(43) is at cross purposes with federal law on the fact that in-service 1–O conscientious objectors are eligible for federal veterans' benefits but not for state veterans' benefits. It does not follow that there is a conflict between state law and federal law. Neither the discharge of conscientious objectors (32 C.F.R. § 75.7(a)) nor the granting to them of federal veterans' benefits is in any way frustrated or impeded by enforcement of M.G.L. c. 4, § 7(43). There is no obligation on Massachusetts to supplement the benefits conferred by federal law on 1–O conscientious objectors. Cf. *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977).

A state which chooses to make voluntary payments to its citizen-veterans is free to give or withhold benefits provided that it does not violate the Equal Protection Clause. In my view, M.G.L. c. 4, § 7(43), does not violate the Equal Protection Clause of the Fourteenth Amendment. Since there is neither a fundamental interest nor a suspect classification implicated by M.G.L. c. 4, § 7(43), the correct standard by which to analyze the constitutionality of this statute is the traditional rational basis test. *Johnson v. Robison*, 415 U.S. 361, 375, n. 14, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1973). Under this test, the challenged statute which embodies a state legislature's decision of how best to dispense monetary bene-

fits "is entitled to a strong presumption of constitutionality."[1] *Mathews v. DeCastro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976).

The conscientious objector who seeks a 1–O discharge (total separation from the military) is not similarly situated with those who fail to complete their tour of duty because they have become unsuitable for military service (32 C.F.R. § 41.7(g)), or suffer from drug abuse (32 C.F.R. § 41.7(f)), or are granted hardship discharges (32 C.F.R. § 41.7(c)). The 1–O conscientious objector is not unqualified for military service. He also initiates his own discharge. He is not discharged on the initiative of the government. Furthermore, those in-service conscientious objectors who seek a 1–A–O reclassification (32 C.F.R. § 75.3(a)(2)) (a transfer to noncombatant duty) are eligible for state veterans' benefits since their discharge papers do not bear the notation "conscientious objector" even if the government elects to discharge rather than transfer them. Thus, only those conscientious objectors who seek a total divorce from the military are excluded from state veterans' benefits.

The legislature that enacted the challenged statute could reasonably have regarded 1–O conscientious objectors as members of a unique class having characteristics substantially different from the classes of servicemen discharged for "unsuitability" under 32 C.F.R. § 41.7(g).

The eligibility of 1–A–O conscientious objectors for benefits under the state statute undermines the plaintiff's contention that the only reason for the exclusion of 1–O conscientious objectors is the legislature's desire to "punish" them for their unpopular beliefs.

By granting a member of the military forces a 1–O discharge, the government confers upon him an exceptional and enormous benefit, namely, a total discharge from all military service, combatant and noncombatant, in time of war or national emergency—the exemption from a service that constitutes the most onerous burden that can be imposed by the country upon any citizen.[2] I can conceive of no legitimate reason for compelling Massachusetts against its will to confer upon him the additional benefits it provides for veterans who did not seek and obtain a total discharge from military service on grounds of conscientious objection. No public purpose is served by the state's expenditure of public funds for the payment of such benefits to those who were granted 1–O conscientious objector discharges. Granting the irreproachable character of the plaintiff's motives for seeking and obtaining such a discharge, the fact remains that he thereby not only failed to complete his tour of duty, but also eliminated himself totally and permanently from future service in the armed forces, whether combatant or noncombatant.

---

1. The full passage reads as follows:

"The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established. Governmental decisions to spend money to improve the general public welfare in one way and not another are 'not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.' . . . In enacting legislation of this kind a government does not deny equal protection 'merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' . .

"To be sure, the standard by which legislation such as this must be judged 'is not a toothless one' . . . .. But the challenged statute is entitled to a strong presumption of constitutionality."
429 U.S. at 185, 97 S.Ct. at 434.

2. In *Welsh v. United States* (1970), 398 U.S. 333 at page 356, 90 S.Ct. 1792 at page 1805, 26 L.Ed.2d 308, Harlan, J., in his concurring opinion stated: "Congress, of course, could, entirely consistently with the requirements of the Constitution, eliminate *all* exemptions for conscientious objectors." (Emphasis in the original.) See also, to the same effect, *Hamilton v. Regents,* 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934).

In my opinion, the legislature, in excluding 1–O conscientious objectors from the state's veterans' benefits under M.G.L. c. 4, § 7(43), while at the same time granting them to servicemen who were discharged because found unsuitable for military service, acted within the scope of its constitutional powers. I would grant the motion to dismiss the complaint and order judgment for the defendants.

