**Hal C. WILSON**

v.

**WILLOWBROOK, INC.**

**No. CA 3–75–0534–C.**

United States District Court,
N. D. Texas,
Dallas Division.

June 29, 1977.

James H. Anderson, Dallas, Tex., for plaintiff.

Durwood D. Crawford and John F. McCarthy, Jr., Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, Tex., for defendant.

MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff Hal C. Wilson, a white citizen of the United States, brought this action for damages and injunctive relief against his former employer, Willowbrook, Inc., for alleged wrongful discharge and discriminatory employment practices. Plaintiff founded his complaint on 42 U.S.C. §§ 1981 and 2000e–3(a), vesting proper jurisdiction in this Court under 28 U.S.C. §§ 1331 and 1343(4).

*Facts*

The seeds from which this controversy sprouted were planted in July of 1972, when plaintiff gained employment as a general warehouseman for defendant Willowbrook, which distributes Coors beer in the Dallas area. Plaintiff's duties included the loading and unloading or route sales trucks and the operation of forklifts, as well as general maintenance chores in the warehouse area. At the time of his termination, plaintiff was the second in seniority on his shift and the third senior warehouseman.

The first alleged friction between plaintiff and his superiors came in late 1973, when plaintiff actively worked to organize employees of Willowbrook for the Teamsters union. Upon learning of a concurrent and more successful organizing effort on behalf of the Brewery Workers' union, plaintiff shifted his allegiance in support of that union, and testified on its behalf at an October, 1973, representation hearing. Defendant's management, which actively opposed unionization, was aware of plaintiff's activities. Plaintiff's efforts on behalf of the union proved unsuccessful, as the union lost its election against management on November 27, 1973, by a vote of 66 to 9. Plaintiff continued his employment without incident for the next few months.

On Friday, February 15, 1974, warehouse manager Jim Kennedy suggested to plaintiff that he apply for a job with another distributor seeking to employ an assistant warehouse manager. Plaintiff pursued the suggestion the next day, but upon arriving at the office of the prospective employer, found a Teamsters picket line. Rather than cross the picket line, plaintiff disclaimed further interest in the job to Kennedy the following Monday, because, as plaintiff characterized himself, he was a Teamsters man and did not want to get involved in a labor dispute.

On Tuesday, February 19, plaintiff returned to work, and circulated a draft petition among several black warehouse employees for consideration. The draft, introduced at trial as plaintiff's exhibit 5, set out allegations of racial discrimination, and requested that the Equal Employment Opportunity Commission conduct an investigation of the allegations. While some employees agreed to sign the petition in final form, several others borrowed the draft for the purpose of further study. Plaintiff alleges that while said employees had the draft in their possession, certain members of management learned of the petition and its circulation, and as a direct and immediate result thereof, discharged plaintiff later that day.

Plaintiff visited Kennedy's office around noon, at which time Kennedy asked plaintiff to get him a sandwich. Plaintiff agreed to the request, returned with the sandwich, and was soon informed by Kennedy that he should seek employment elsewhere. Plaintiff replied that he was happy with his work at Willowbrook, but Kennedy noted that the feeling was not reciprocal, that management was not satisfied with plaintiff's work. Plaintiff returned the following day to pick up his check.

As evidence of management's displeasure with plaintiff's work, defendant introduced at trial an employee evaluation form dated August 30, 1973, which rated plaintiff's performance below average. Defendant's exhibit 11. Defendant also introduced a document purportedly penned by Kennedy the day of the termination interview, noting six criticisms of plaintiff's work, on which the termination decision was allegedly based. Defendant claims that the decision was made one week prior to termination, that plaintiff was not fired then because the pay period had not expired, and that plaintiff's circulation of the EEOC petition was not a factor in the decision, since management had no knowledge of the activity.

Plaintiff, however, claims that he was discharged for two reasons: that he engaged in union organization efforts and that he circulated an EEOC petition for the purpose of remedying alleged racial discrimination by defendant. On April 24, 1974, plaintiff filed a charge with the National Labor Relations Board complaining of his termination on the basis of union activity. The administrative law judge found in favor of plaintiff, but a three-member panel of the Board reversed the decision. The case is presently on appeal to the Fifth Circuit.

The only issue before this court is whether plaintiff was fired because of his efforts to petition the EEOC for an investigation of racial discrimination on behalf of defendant's black employees. Upon review of the above facts and the applicable law, the Court finds that plaintiff has failed to prove his allegation by a preponderance of the evidence.

Although the Court doubts that plaintiff's cause of action lies within the purview of 42 U.S.C. § 1981, it is clear that 42 U.S.C. § 2000e–3(a) encompasses plaintiff's claim. That section prohibits an employer from discriminating against any employee

> because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (1970).

In order to prevail in an action brought under the above statute, plaintiff has the burden to prove by a preponderance of the evidence that a violation has occurred.

This plaintiff has failed to do. No credible proof was offered to the effect that any member of management read the draft petition, saw it being circulated, or was even aware of its existence. Given the dearth of proof, plaintiff's contention that his circulation of the petition at 10:30 a. m. resulted in his firing two hours later must fail.

Accordingly, judgment must be entered for defendant. Defendant's attorney is requested to prepare and submit appropriate order providing for taxing each party with its own costs.