Magdalena GARCIA, Fernando Romero, Victoria Perez, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

RUSH–PRESBYTERIAN–ST. LUKE'S MEDICAL CENTER, James A. Campbell, Charles A. Freeman, Phillip N. Jones, Defendants.

No. 77 C 323.

United States District Court, N. D. Illinois, E. D.

Sept. 11, 1978.

James R. Fennerty, Robert M. Hodge, Stephen G. Seliger, Julian R. Birnbaum and Fred L. Lieb, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

John W. Gerstner, Richard H. Schnadig, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

This is a suit brought by three individuals, on behalf of themselves and all others similarly situated, to redress an alleged policy of arbitrary discrimination in employment based on race and national origin. The cause is before the court on plaintiffs' motions to amend Count I of the complaint and to certify a class, and on defendants' motions for partial summary judgment on Counts I and II. For the following reasons, plaintiffs' motions are granted; defendants' are granted in part and denied in part.

### I.

Count I is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* by Magdalena Garcia, a Mexican-American citizen of the United States who was employed by defendant Rush-Presbyterian-St. Luke's Medical Center from August 21, 1958 to February 6, 1976 as a lab technician. She alleges that throughout her employment she complained to defendant Rush of discriminatory

practices against Latino [1] employees, including the refusal to hire qualified Latinos, discriminatory assignment of Latino employees, and discriminatory evaluation of Latino employees' work; that when requested to do so by Latino co-workers, she assisted them in complaining of discriminatory practices by directing them to appropriate government agencies, interpreting from Spanish to English for them, and complaining to hospital administrators on their behalf; that defendant violated Title VII by discharging her in retaliation for her advocacy of Latino rights and assistance to other Latinos; and that the discharge was because of her race and national origin. Jurisdiction for Count I is invoked under 28 U.S.C. §§ 1343(4) and 42 U.S.C. § 2000e–5(f).

Count II is brought by Garcia, Victoria Perez and Fernando Romero under the Civil Rights Act of 1870, 42 U.S.C. § 1981. They repeat the retaliation allegations of Garcia's Title VII claim. Also, Perez alleges that she is a United States citizen of Mexican ancestry who was employed at defendant Rush's Oak Brook facility as an interviewer; that around June 1, 1976, she applied for a job opening as a Lab Liaison Technician at Rush's main facility in Chicago; and that although qualified for the position, it was denied her solely because of her race and national origin. Plaintiff Romero alleges that he is a United States citizen who was born in Mexico; that around July 15, 1976, he applied for and was denied a position as a maintenance journeyman with defendant Rush; and that the only reason he was not hired was his race and national origin. Jurisdiction for Count II is invoked under 28 U.S.C. § 1343(4).

The individual plaintiffs, in both counts of the complaint, challenge an alleged policy and practice of defendants which purposely excludes Latinos from defendants' work force and limits their employment opportunities by (1) refusal to consider or hire Latinos who are qualified for various available positions at Rush; (2) discriminatory assignment of Latino employees; and (3) utilization of discriminatory standards for judging the performance of Latino employees, thus affecting their promotion, assignment and tenure. Relief is sought in both counts on behalf of a class of "all Latinos who have been or will be in the future denied equal employment opportunities by the defendants on the basis of race, color or national origin or be discriminated against by defendants for opposing unlawful employment practices." The term "Latino" is defined as "any Spanish-surnamed person or individual of Hispanic ancestry residing in the City of Chicago." Class relief is sought in both counts in the form of injunctions restraining defendants from further acts of discrimination, requiring them to develop and implement an affirmative action program, and granting plaintiffs' class reinstatement, back pay, and damages.

## II.

Plaintiffs move to amend Count I and join as a plaintiff Victoria Perez who states that she filed charges with the Equal Employment Opportunity Commission on September 12, 1976 and received her "notice of right to sue" letter on January 12, 1978. The proposed amendment would add Perez's claims of unlawful refusal to award her a Lab Liaison Technician position, and of unlawful discharge because of her race and national origin and in retaliation for her opposition to defendants' unlawful employment practices. The motion is unopposed, but defendant Rush argues that Perez's claim must be limited both in the scope of her charges and time period involved. The court construes defendant's objections as extending to Perez the arguments raised in the motion for partial summary judgment on Count I. Accordingly, the disposition of that motion in Part III, *infra*, resolves these objections.

Rule 15, Fed.R.Civ.P., provides that leave should be freely given to amend a com-

---

1. Plaintiffs define Latino as "any Spanish surnamed person or individual of Hispanic ancestry residing in the City of Chicago."

plaint when justice so requires. Defendant does not argue that its position is prejudiced nor that it is unfairly surprised by the addition of Perez's claim to Count I. In fact, the proposed Title VII claim is identical to Perez's § 1981 claim, except for the addition of a claim regarding her discharge; the addition of Perez's claim to Count I will allow a more comprehensive disposition of the dispute in this case. Therefore, plaintiffs' motion to amend Count I of the complaint is granted.

### III.

■ Rule 23(c)(1), Fed.R.Civ.P., requires that

[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.

Recent decisions in this circuit and elsewhere have expressed a strong preference for early certification as required by the explicit language of the rule. *See, e. g., Larionoff v. United States,* 175 U.S.App. D.C. 32, 36–37, 533 F.2d 1167, 1182–83, *aff'd,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Jimenez v. Weinberger,* 523 F.2d 689 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). It has been suggested that the rationale of these cases, if carried to a logical extreme, would require certification to precede even disposition of motions under Rule 12. *Comment, Developments in the Law of Class Actions,* 89 Harv.L.Rev. 1318, 1421 (1976). However, where, as here, defendants' summary judgment motions allow the court to explore and define the proper range of judicial inquiry on the allegations of the complaint, disposition of those motions before certification is appropriate.

■ Defendant Rush supports its motion for summary judgment as to Count I with a wide ranging set of contentions. First, it argues that the allegations of that count are not reasonably related to the facts alleged in the plaintiffs' underlying charges to the Commission and cannot form the basis of the wholesale attack mounted on defendant's employment policies. As to

Garcia, defendant argues that the complaint must be limited to the issue of whether her discharge was discriminatory. The reference to Rush's alleged retaliation for her activity on behalf of other Latinos does not provide a sufficient nexus between her charge and the judicial complaint, it is urged, for the charge, unlike the complaint, does not allege discrimination against other Latino employees, but states only that Garcia's activity on behalf of other Latinos was the reason for her own discharge. Similarly, defendant argues that Perez's claim must be limited to those allegations related to her charge.

In *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), the court articulated a standard for determining the scope of a Title VII complaint:

The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that 'the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.' 538 F.2d at 167, *citing Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir. 1971).

*See also Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970). In applying this standard, the court is mindful of the policy of judicial solicitude toward Title VII plaintiffs in the construction of charges. "Technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). As the court stated in *Jenkins,*

[t]he Civil Rights Act is designed to protect those who are least able to protect themselves. . . . To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect

to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected. 538 F.2d at 168. (Citation omitted.)

An examination of Garcia's and Perez's charges reveals that the allegations of the complaint are reasonably related to the allegations of the charges. Garcia's charge states that the cause of the discrimination was race or color and

> I believe I was discriminated against because of my Ancestry/Mexica (sic) and Retaliation/Opposing acts of discrimination. I was employed by the Respondent for 17½ years in the position of Lab. Technician. On February 6, 1976, I was fired. . . . The reason given, violation of hospital policies, which I denied. I was the only Latina Lab Technician. in the Dept. That was hired, In the history of the Dept. During my lunch time and breaks, I would help the Latino patients, by interpreting or directing them to the right places. I also believe that because I constantly opposed the acts of discrimination done to Latino employees, and would direct them to the proper agencies to file complaints. I believe the Respondent used violation of hospital's rules to find a cause to terminate my employment.

Perez's charge attributed the alleged discrimination against her to her national origin and stated:

> I was participating in a picket line/sit-in on my own time . . . asking to negotiate with . . . Rush-Presbyterian . . . regarding the discriminatory hiring practices of same. Out of 5,000 employees, only 92 are Latino. . . During July 1976 I requested transfer to the hospital . . . & was told technical positions were not available & would I be interested in clerical work. This is job placement discrimination since I worked as a technician. The hospital further discriminates against latinos by placing them in menial jobs. . . . The hospital has a training development program where it does not encourage latinos to participate.

In layman's language, plaintiffs raise the same concern in their judicial complaint. Both speak to hiring discrimination, Garcia alleging that she was the only Latino lab technician defendant had ever hired, Perez alleging directly that defendant's hiring policies are discriminatory and result in underrepresentation of Latinos in defendant's workforce. Perez's charge specifically alleges discrimination in assignment and promotion—both as to herself in her futile attempts to obtain a transfer and as to other Latino employees' exclusion from more prestigious positions and the training development program. While neither charge specifically or sophisticatedly speaks of discriminatory work evaluation, such an allegation in the judicial complaint is related to the charges' allegation of discriminatory placement of Latinos, their exclusion from the training development program and Perez's inability to obtain a transfer to technical work. The charges are laymen's explicit statements of the employer's expression of discrimination. These two charges are sufficient to launch a judicial inquiry into discrimination in hiring, assignment, promotion and tenure, and need not be limited to questions of discharge and transfer, although Garcia's discharge and Perez's attempt to transfer are the specific events which precipitated the charges and hence naturally play a central role in their narration of defendant's discriminatory acts.

■ Second, Rush argues that neither Perez nor Garcia has stated a claim in Count I for retaliation under section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a) because that section is limited to prohibition of retaliation for use of Title VII machinery by the plaintiff employee and is not designed to impose liability for discharge of an employee who complains generally regarding the employer's employment practices. While some courts have held that section 704(a) is limited to employer retaliation for invoking Title VII enforcement machinery through the filing of a charge, *Novotny v. Great American Federal S & L Ass'n*, 430 F.Supp. 227, 230–31 (W.D.Pa.1977); *EEOC*

*v. Beaver Gasoline Co.*, 14 EPD ¶7,616 (W.D.Pa.1977), such a limitation is not supported by the statutory language.

> Section 704(a) provides, in pertinent part: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, *or* because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e–3(a).

The disjunctive language of the provision precludes the narrow construction defendants urge. And other courts have found that opposition in a wide variety of forms, not limited to the filing of charges, is protected by section 704(a). *See, e. g., Green v. McDonnell Douglas Corp.*, 463 F.2d 337, 341 (8th Cir. 1972), *rev'd on other grounds*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wilson v. Willowbrook, Inc.*, 433 F.Supp. 321 (N.D.Tex.1977), *aff'd without op.*, 569 F.2d 1154 (5th Cir. 1978); *Sherrill v. J. P. Stevens & Co., Inc.*, 410 F.Supp. 770, 784 (W.D.N.C.1975), *aff'd without op.*, 551 F.2d 308 (4th Cir. 1977); *Winsey v. Pace College*, 394 F.Supp. 1324, 1330 (S.D.N.Y. 1975). Perez's charge suggests that she was discharged for participating in a demonstration opposing defendant's alleged practice of refusing to hire Latinos. Garcia's charge states that her opposition to defendant's discrimination against Latino employees and her assistance to them in vindicating their civil rights provoked her discharge. These allegations are sufficient to state a claim under the general language of the statute which protects employees from retaliation because they have "opposed any practice made an unlawful employment practice by this subchapter."

■ Third, Rush argues that the allegations of Count I must be limited to events after May 3, 1975 with regard to Garcia and events after February 16, 1976 with regard to Perez, as the plaintiffs cannot raise allegations relating to events occurring more than 300 days prior to the dates on which their EEOC charges are deemed filed. Plaintiffs argue that because a continuing policy and practice of discrimination is alleged, the limitation period is not a bar.

Title VII's statute of limitations provides a 300 day period in which an EEOC charge may be timely filed. 42 U.S.C. § 2000e–5(c). Any events occurring more than 300 days prior to the date of the EEOC charge is deemed filed are treated as being filed untimely. *Moore v. Sunbeam Corporation*, 459 F.2d 811, 826 (7th Cir. 1972). In *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court held that a Title VII plaintiff could not bring an action seeking to premise liability on discriminatory acts which have not been made the basis of a timely charge filed with the EEOC regardless of whether they may be characterized as "continuing." The Court stated:

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences. 431 U.S. at 558, 97 S.Ct. at 1889.

Thus, while acts which were not the basis of the EEOC charges may be relevant as background the timely claims, they may not themselves constitute the basis for imposition of liability. Accordingly, the allegations of Count I must be limited to events occurring not more than 300 days prior to the dates on which plaintiffs filed their charges: May 3, 1975 (Garcia) and February 16, 1976 (Perez).

## IV.

■ In their motion for partial summary judgment on Count II, defendants argue first that Count II fails to state a claim under § 1981 because it does not allege race or alienage discrimination, but only discrimination on the basis of national origin,

which is not prohibited by § 1981. They insist that plaintiffs' labelling of the discrimination as racial is insufficient to bring them within § 1981. Plaintiffs respond with the argument that the discrimination against them is racial in character for, as to Mexican-Americans, ancestry, descent and national origin are intimately related and all based on race. Hence, plaintiffs argue that Garcia, who is a "Mexican-American citizen", Perez, who is a "citizen of the United States of Mexican ancestry", and Romero, "a citizen of the United States born in Mexico" may all properly invoke § 1981.

Title 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The scope of protection afforded by this section has been much litigated. It is now settled that it extends to claims of discrimination on the basis of alienage, since the section applies to "all persons," unlike § 1982, which is limited to "all citizens". *See Takahashi v. Fish and Game Commission*, 334 U.S. 410, 419–20, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). Courts have split as to the section's scope over claims of discrimination on the basis of national origin, frequently because of differing notions of the relationship—or lack thereof—between race and national origin. In denying a cause of action to Spanish-surnamed individuals, one court held:

[T]he provisions of 42 U.S.C. § 1981 *are limited to their application to discrimination, the effect of which is to deny to any person within the jurisdiction of the United States any of the rights enumerated in that section, to the extent that such rights are enjoyed by white citizens of this nation. Discrimination on other grounds, such as religion, sex, or national origin, to which white citizens may be subject, as well as white non-citizens, non-white citizens, or non-white non-citizens, is not proscribed by the statute.* (Emphasis in original.)

*Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1, 15 (E.D.Pa.1975); *see also Martinez v. Hazelton Research Animals, Inc.*, 430 F.Supp. 186 (D.Md.1977); *Vasquez v. Werner Continental, Inc.*, 429 F.Supp. 513, 515 (N.D.Ill.1977); *Zubero v. Memorex, Inc.*, 12 FEP Cases 604 (N.D.Cal.1976); *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ariz.1975); *Marshall v. Plumbers and Steamfitters Local Union 60*, 343 F.Supp. 70 (E.D.La.1972); *Schetter v. Heim*, 300 F.Supp. 1070 (E.D.Wis.1969).

Other courts, however, have applied § 1981 to claims of national origin or ethnic background discrimination, usually by finding a degree of identity between such discrimination and racial discrimination. The most persuasive articulation of the rationale for affording a § 1981 remedy for such discrimination can be found in *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977), which dismissed a § 1981 suit alleging discrimination on the basis of plaintiff's Slavic origin.

The terms "race" and "racial discrimination" may be of such doubtful sociological validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly-accepted, albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, whites are plainly a "race" susceptible to "racial discrimination;" Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination, and, however inaccurately or stupidly, are frequently and even commonly subject to a "racial" identification as "non-whites." There is accordingly both a practical need and a logical reason to extend § 1981's proscription against exclusively "racial"

employment discrimination to these groups of potential discriminatees.

The same cannot be said with regard to persons of Slavic or Italian or Jewish origin. These persons are not so commonly identified as "races" nor so frequently subject to that "racial" discrimination which is the specific and exclusive target of § 1981. Members of these groups, like plaintiff Budinsky, do not properly fall within the coverage of the statute.

\* \* \* \* \* \*

Section 1981 covers employment discrimination based upon race or upon what (perhaps from the point of view of the discriminator) might pragmatically be deemed as "race." It does not cover plaintiff. He alleges discrimination against him by the defendant-employer not because he is white per se, but because he is Slavic.

425 F.Supp. at 788, 789.

Employing this rationale, one court has upheld jurisdiction of a § 1981 claim by a " 'brown skinned resident alien of Hispanic (Mexican) origin.' " *Ortega v. Merit Ins. Co.*, 433 F.Supp. 135, 138 (N.D.Ill.1977). Others have recognized § 1981 claims by Mexican-Americans. *Davis v. County of Los Angeles*, 566 F.2d 1334 (9th Cir. 1977), *cert. granted*, 437 U.S. 903, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978); *Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971); *Gomez v. Pima County*, 426 F.Supp. 816, 819 n. 1 (D.Ariz.1976). Still others have allowed § 1981 claims by Puerto Ricans and Hispanics and United States citizens of Puerto Rican descent. *Puerto Rican Media Action & Educ. Council v. Metromedia, Inc.*, 9 EPD ¶ 10,173 (S.D.N.Y. 1975); *Maldonado v. Broadcast Plaza, Inc.*, 10 EPD ¶ 10,264 (D.Conn.1974); *Chance v. Board of Examiners*, 330 F.Supp. 203 (S.D. N.Y.1971).

On balance, the court finds the rationale and result of this latter group of cases persuasive; it agrees that there is both "a practical need and a logical reason" to extend the protection of § 1981 to persons of Hispanic ancestry or ethnic background.

These cases recognize that such persons have been the victims of invidious group discrimination which, while perhaps not racial in a scientific sense, is racial in its social operation and perception. The court notes that problems of proof may arise later in these proceedings because of the lack of an authoritative and feasible method of discerning the relationship between national origin and racial discrimination where both are simultaneously present. One court has stated,

On the one hand, courts might attempt on a case by case basis to separate out the elements of racial and national origin discrimination. Another approach would be to consider sociological and historical evidence relevant to the experience of a particular national origin group in the community in which discrimination is alleged, together with anthropological evidence about the racial characteristics of the national origin group, and determine whether it should be rebuttably presumed that discrimination against that group is infected with racial discrimination. *Cubas v. Rapid Am. Corp., Inc.*, 420 F.Supp. 663, 666 n. 2 (E.D.Pa.1976).

*See Enriquez v. Honeywell, Inc.*, 431 F.Supp. 901, 906 (W.D.Okl.1977), *cf. LaFore v. Emblem Tape & Label Co.*, 448 F.Supp. 824 at 826 (D.Colo.1978).

The court need not select or develop a method at this stage of the proceedings, although the need for one at trial is clear. For now, it is sufficient for plaintiffs to allege that their ancestry and even national origin are based on race, in some sense, if not indistinguishably related to race; and that defendants have discriminated against them on racial and ethnic grounds. The court thus concludes that plaintiffs have stated a claim under § 1981.

Second, defendants argue that the allegations of Count II must be limited to events occurring after January 31, 1972, as plaintiffs cannot challenge acts occurring more than five years before the filing of the complaint. Since § 1981 contains no statute of limitations, the most appropriate state statute is applied. *See Johnson v.*

*Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In this circuit, Illinois' five year statute of limitations, Ill.Rev.Stat. ch. 83, § 16, has been held to govern. *Waters v. Wisconsin Steel Works of International Harvester Company,* 427 F.2d 476, 488 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

Plaintiffs argue that the limitations period must be extended because the complaint alleges a continuing policy of discrimination and defendants' present practices, even if facially neutral, are unlawful if they perpetuate prior discrimination. Until the recent decision in *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), this view was correct. *See, e. g., Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 880 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). In *Teamsters,* the Supreme Court held that neutral, *bona fide* seniority systems which perpetuate prior discrimination, are not unlawful. 431 U.S. at 353–54, 97 S.Ct. 1843. Since any perpetration of such discrimination occurs primarily through a seniority system *Teamsters'* holding greatly limits the relevance of prior discrimination. *See also United Air Lines, Inc. v. Evans, supra.* Accordingly, defendants' motion as to the limitations period must be granted, although to the extent pre-limitations period evidence of discrimination constitutes relevant background evidence regarding, for example, the motivation for post-limitation period practices, it will not be excluded.

■■ Third, defendants argue that Garcia must be excluded from Count II because her allegations of retaliation for exercise of her Title VII rights do not state a claim under § 1981. They rely on *Tramble v. Converters Ink Company,* 343 F.Supp. 1350, 1354 (N.D.Ill.1972), in which the court found that a discharge in retaliation for invoking Title VII machinery did not necessarily constitute a § 1981 violation:

As it is clear that many parties can and do make complaints to the EEOC based upon grounds of discrimination other than race, i. e., religion, sex, and/or national origin, it is likewise clear that no racial connection necessarily exists between such a complaint and an employer's retaliation. An employer theoretically could discharge every one of its employees who makes charges against it before the EEOC irrespective of whether they are white, black, or oriental. As the *racial* motivation which is the central crux of a § 1981 action is not necessarily involved in such a retaliatory discharge, we conclude that a discharge of an employee because of his bringing charges before the EEOC, while clearly a violation of Section 704(a) of Title VII, is not a violation of § 1981.[2]

Defendants correctly point out that Garcia has not realleged in Count II her allegation (made in Count I, ¶ 16) that she was discharged because of her race and national origin. Her Count II allegations are limited to charges that defendants discharged her in retaliation for her advocacy of Latino rights and assistance to other Latinos who sought to complain regarding defendants' alleged discriminatory policies.

Several courts have held that a § 1981 claim may be based on allegations of retaliation against a white plaintiff for trying to vindicate the rights of non-white minorities. In *DeMatteis v. Eastman Kodak,* 511 F.2d 306 (2d Cir. 1975), the court held that a white employee whose section 704(a) claim was jurisdictionally barred could sue his employer under § 1981 for compelling his early retirement because he sold his house to a black. The court relied on *Sullivan v. Little Hunting Park,* 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), in which the Supreme Court held that a white person has standing to sue where he is penalized for attempting to vindicate the rights of minorities protected by § 1982. In *Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266 (6th Cir.

---

2. The court notes that Judge Will, who wrote these words, has since changed his view of § 1981 and has held that it extends to national origin discrimination. *Ortega v. Merit Ins. Co.,* 433 F.Supp. 135 (N.D.Ill.1977).

1977), the court held that § 1981 afforded a remedy to a white employee suing his employer for discharging him because he protested the racially motivated discharge of a black fellow worker. While noting that *Sullivan* did not absolutely require this result, since the Supreme Court had addressed explicitly only the range of § 1982, the court could see "no reason . . . not to apply the rationale of *Sullivan* in interpreting Section 1981." 558 F.2d at 1270; *see also Cubas v. Rapid American Corp.*, 420 F.Supp. 663 (E.D.Pa.1976).

These cases compel the recognition of a cause of action under § 1981 on the allegations made here, and this conclusion is not necessarily inconsistent with the reasoning in *Tramble*. Garcia alleges that she was punished for protesting defendants' discriminatory practices against Latino employees and for assisting Latino co-workers in complaining of discriminatory practices. The situation is strikingly similar to that in *Sullivan*, where the white plaintiff brought suit under § 1981 and § 1982 alleging that he had been expelled from membership in the defendant corporation for protesting its board's refusal to approve the assignment of his membership share to a black tenant. The Court found that to allow plaintiff's expulsion

> would give impetus to the perpetuation of racial restrictions on property. That is why we said in *Barrows v. Jackson*, 346 U.S. 249, 259 [73 S.Ct. 1031, 97 L.Ed. 1586], that the white owner is at times "the only effective adversary" of the unlawful restrictive covenant. Under the terms of our decision in *Barrows*, there can be no question that Sullivan has standing to maintain this action. 396 U.S. at 237, 90 S.Ct. at 404.

As in *Sullivan*, Garcia here makes the allegation that she has been harmed for attempting to vindicate the rights of minorities under § 1981; she has alleged that she was victimized and ultimately discharged for her vigorous advocacy of Latino rights

and efforts to vindicate those rights through aid to her co-workers when defendants unlawfully discriminated against them. And, as in *Sullivan*, to allow plaintiff to be punished for her actions would give impetus to the perpetuation of racial discrimination. Thus, the court finds that Garcia has stated a claim under § 1981. Again this conclusion is not inconsistent with the reasoning in *Tramble*, although it reaches an opposite result. There the court recognized that finding that section 704(a) had been violated would not compel the conclusion that § 1981 had also been violated. But neither are the two provisions mutually exclusive in terms of the conduct they prohibit. Presumably, where the employer discharges an employee for protesting discrimination against a co-worker on the basis of sex or religion, the employee could not bring a claim under § 1981, although a valid section 704(a) claim could be made. But where, as here, the retaliation is alleged to have been motivated by racial discrimination, albeit against others than plaintiff, and that retaliation harms plaintiff, a § 1981 claim can be stated.

■ Fourth, defendants argue that the individual defendants Campbell, Freeman, and Jones should be dismissed from Count II [3] on the ground that individuals acting on behalf of an employer are not proper defendants under § 1981. In *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the court stated:

> The right to "lease" is protected by § 1982 against the actions of third parties, as well as against the actions of the immediate lessor. Respondents' [defendant corporation] actions in refusing to approve the assignment of the membership share in this case was clearly an interference with [petitioner's] right to "lease." A narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded by § 1 of the Civil Rights Act of 1866

---

**3.** The court has already granted defendants' motion to dismiss the individual defendants from Count I of the complaint.

. . . from which § 1982 was derived. 396 U.S. at 237, 90 S.Ct. at 404.

Since then, courts have broadly interpreted § 1981 and § 1982, both of which are derived from the Civil Rights Act of 1866, 14 Stat. 27, and held that a third party's interference with rights guaranteed under either section will subject such a person to personal liability. *See e. g., Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1146 (4th Cir. 1975); *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), *cert. denied*, 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975); *Hernandez v. Erlenbusch*, 368 F.Supp. 752 (D.Or.1973); *Walker v. Pointer*, 304 F.Supp. 56 (N.D.Tex.1969). In this case, while technically defendant Rush is the employer in a position to contract with plaintiffs, the complaint charges that the individual defendants are responsible for Rush's pattern and practice of employment discrimination, for the individual defendants are chief executive officers who formulate and execute the employment policies of the hospital. Should the complaint's allegations be proved, these defendants may be liable under § 1981 for interfering with plaintiffs' right to contract with defendant Rush. The determination of their responsibility for the policies and practices challenged must await development of the facts.

## V.

■ Employment discrimination suits by nature involve class-wide discrimination and are therefore peculiarly suited to the class action mode of adjudication. *Romasanta v. United Air Lines, Inc.*, 537 F.2d 915, 918 (7th Cir. 1976), *aff'd*, 432 U.S. 385, 97 S.Ct. 2464, 52 L.Ed.2d 423 (1977); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719–20 (7th Cir. 1969). However, "careful attention to the requirements of [Rule 23] remains nonetheless indispensable." *East Texas Motor Freight v. Rodriquez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977); *see Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). In pertinent part, Rule 23, Fed.R.Civ.P., provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

■ Plaintiffs have the burden of showing that a suit satisfies the requirements of Rule 23, and this court is obliged to measure the allegations of fact and material adduced during the discovery against the criteria stated in the rule. *See Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976); *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1061 (8th Cir. 1975); *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 268 n. 3 (10th Cir. 1975); *Tolbert v. Western Electric Company*, 56 F.R.D. 108, 113 (N.D.Ga.1972). However, the court should not conduct a preliminary inquiry into the merits in order to determine whether the suit should be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). As stated in Part III, *supra*, expeditious determination of the certification issue is desirable, and hence the rule provides that an order granting certification of a class may be altered or amended before a decision on the merits is rendered. *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 36–38 (N.D.Cal.1977).

*Numerosity*

■ The numerosity requirement must be judged in light of the particular

circumstances of each case. *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. at 45. In passing on a motion to certify and determining if the numerosity requirement is met, the court may consider reasonable inferences which can be drawn from the facts before it and the broad remedial purposes of the Civil Rights Acts. *See Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977); *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). In defining the parameters of the proposed class for purposes of the numerosity requirement in a Title VII action, it is settled law that the plaintiff can bring an action only on behalf of those employees who could have filed charges with the Commission at the time plaintiff filed his charges. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d at 719–20. As to the § 1981 claim, there presumably is no such restriction. *Cf. Johnson v. Railway Express Agency, Inc., supra.*

■ In support of their claim that the proposed membership in the class is so numerous that joinder of all members is impracticable, plaintiffs argue that Latinos are statistically underrepresented in Rush's workforce generally and, in particular, underrepresented in management, professional and technical positions. Their assertions suggest that from 1975 through 1976, of approximately 5000 Rush employees, only 95 were Latino. During 1975, not one of the 49 promotional transfers made by defendants was awarded to a Latino; and only six of a total 133 promotions were awarded to Latinos. During the same time period, of 10,000 job applicants, only 97 Latinos were interviewed for employment by defendants. Plaintiffs' allegations of a pattern and practice of discrimination coupled with their *prima facie* showing that two per cent of defendants' employees, one per cent of those interviewed, and four per cent of those promoted were Latinos, support their argument that class treatment is proper here and that the numerosity re-

quirement has been satisfied. *Cf. Teamsters v. United States*, 431 U.S. at 362, 97 S.Ct. 1843; *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). The number of Latino applicants and employees during the years for which the court has been furnished data, coupled with the pattern and practice allegations, cause the court to conclude that plaintiffs' suit satisfies the numerosity requirement.

■ Defendants object that the class allegations are too general to allow certification; and that the class, as defined by plaintiffs, is not ascertainable. Defendants urge that the suggested class contains both persons whose claims are barred under the applicable statutes of limitations and persons whose rights might be violated by defendants in the future. However, this court's ruling in Parts III and IV of this memorandum on the statute of limitations questions effectively limits the class to those Latinos who have been injured by the alleged illegal practices during the relevant time periods. It is true that the class cannot include future victims of illegal discrimination. *Mathews v. Diaz*, 426 U.S. 67, 71–72, n. 3, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). But defendants do not suggest that, once future victims are excluded, the proposed class no longer satisfies the numerosity requirement. Indeed, the statistical data placed before the court by plaintiffs covers only years concededly within the relevant periods of limitations. Whether a particular person qualifies as a present victim is a question whose resolution must await a determination of whether defendants engaged in the alleged pattern and practice.

*Commonality*

■ The commonality requirement is often liberally construed in employment discrimination suits, particularly when the complaint is directed against system-wide across the board discrimination, and where "an employer's underlying policy of discrimination is viewed as a fact sufficiently common to and typical of employment claims which are based upon different manifesta-

tions of that single underlying policy to permit the joinder of all such claims in a class action." *Piva v. Xerox Corp.*, 70 F.R.D. 378, 385 (N.D.Cal.1975). Although there is a possibility that individual claims may vary, this possibility does not destroy the inherent commonality which exists in suits of this type, since the "Damoclean threat of a racially discriminatory policy hangs over the . . . class [and] is a question of fact common to all members of the class." *Ridgeway v. Intern. Broth. of Elec. Wkrs., Loc. No. 134*, 74 F.R.D. 597, 603 (N.D.Ill.1977), *citing Johnson v. Georgia Highway Express Co.*, 417 F.2d 1122, 1124 (5th Cir. 1969); *see also Senter v. General Motors Corp.*, 532 F.2d at 523–24. The court concludes that the alleged discriminatory character of defendants' conduct, i. e. the pattern and practice of discrimination in hiring, assignment, evaluation, promotion and termination, will be basic to this action and raises common questions of law and fact. *See Bachman v. Collier*, 73 F.R.D. 300, 304 (D.D.C.1976). The class definition does appear to be unnecessarily general, however, in that it fails to specify the challenged means by which the alleged pattern and practice of discrimination was implemented. The complaint focuses on the denial of equal employment opportunities by (1) refusal to consider or hire Latinos who are qualified for various available positions at Rush, (2) discriminatory assignment of Latino employees, and (3) utilization of discriminatory standards for judging the performance of Latino employees, thus affecting their promotion, assignment and tenure. While this focus is also broad, it is less vague than "denial of equal employment opportunities" and hence, the class definition should contain an enumeration of these challenged practices.

The court is not impressed by defendants' argument that the class definition is overbroad in that it may include persons not qualified for employment, promotion or tenure at Rush. First, even under plaintiffs' broad proposed definition, the class is limited to persons "denied equal employment opportunities on account of their race, national origin or opposition to the unlaw-

ful employment practices of defendants, as defined in Counts I and II." It does not, and it could not, include persons who, for reasons not forbidden by statute, are not employed or promoted or tenured by defendants. Second, even if the class as defined were overbroad, persons not properly included may—and should—be winnowed out by later order after the parties have explored the system-wide claim through discovery procedures. *Ridgeway v. Intern. Broth. of Elec. Wkrs., Loc. No. 134*, 74 F.R.D. at 604.

*Typicality*

A consideration of the typicality requirement involves much overlap with a consideration of commonality. *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. at 41–42. As with the latter requirement, courts have taken a liberal approach to typicality and have held an allegation of general policy of discrimination to be sufficient to allow joinder of claims alleging different manifestations of the single underlying policy. *Piva v. Xerox Corp.*, 70 F.R.D. at 384–87. To fulfill the typicality requirement, the class representative must demonstrate that there is, in fact, a class needing representation and that his interest in the suit is so aligned with that of the class that a community of interests exists. *See, e. g., Wright v. Stone Container Corp.*, 524 F.2d at 1062; *Taylor v. Safeway Stores, Inc.*, 524 F.2d at 270.

Defendants raise numerous arguments, supported by affidavits, designed to show that the claims of the named plaintiffs are not typical. Garcia's employment history, they point out, is one marked by personal conflict with her supervisors and fellow employees. They say that on several occasions, she interfered with patient care and interrupted hospital work to solicit grievances against Rush. After being warned orally and in writing to refrain from these activities during working hours, she was suspended for three days for "abusive insubordination" and, ultimately, discharged. Perez was the only Rush employee to participate in the sit-in demonstration which,

according to defendants, precipitated her discharge. Romero's claim, as a rejected job applicant, is urged to be atypical of the claims of employees; conversely, Garcia's and Perez's claims, as former employees, are urged to be atypical of the claims of job applicants. To the extent defendants' affidavits attack the claims of the named plaintiffs on the merits, they are opposed by counter-affidavits which offer contrary explanations of the circumstances surrounding Garcia's and Perez's discharge and the failure to hire Romero.

■ Defendants' arguments construe too narrowly the typicality requirement. In effect, defendants suggest that typicality cannot be satisfied by anything less than substantial identity between plaintiffs' claims and those of absent class members. This is not true. The factual differences in detail between plaintiffs' claims and those of the class will not preclude a finding of typicality where the claims arise out of the same legal or remedial theory. *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir.), *cert. denied* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *Gibson v. Local 40, Supercargoes & Checkers, etc.*, 543 F.2d 1259, 1264 (9th Cir. 1976); *Senter v. General Motors Corp.*, 532 F.2d at 523–24; *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976); *Rich v. Martin Marietta Corporation*, 522 F.2d 333, 340 (10th Cir. 1975); *Long v. Sapp*, 502 F.2d 34, 42–43 (5th Cir. 1974); 7 Wright & Miller, Federal Practice & Procedure: Civil § 1764 (1978 Supp.). The named plaintiffs have charged discrimination based on a pattern or practice not unique to them. They have offered statistical evidence which suggests that a significant number of other members of the class have been similarly victimized by the same alleged pattern or practice. They themselves have felt the impact of defendants' alleged discrimination in varying ways ranging from refusal to hire to discharge and denial of promotional transfer. Their factually varying claims are logically joined together in one action and satisfy the requirement of com-

monality of interest with the claims of Latino job applicants and employees. The court concludes that a satisfactory showing of the existence of a class and a community of interests has been made.

*Adequacy of Representation*

■ Among the factors to be considered in passing on this aspect of the motion for certification are: (1) whether plaintiffs' attorney is competent and qualified to prosecute the action on behalf of the class, (2) whether the named plaintiffs' interest is antagonistic to that of the class, and (3) whether the action is collusive. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 247; *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (2d Cir. 1968); *see also Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). This court has no reason to suppose, nor do defendants contend, that this action is collusive or that plaintiffs' attorneys are not qualified.

■ Rather, it is the second requirement on which defendants' objections focus. This requirement is particularly important in a Rule 23(b)(2) class action, such as this one, where class members will be bound without notice either by the collateral estoppel or the *stare decisis* effect of a suit brought by an individual plaintiff. But, "so long as the representation is adequate and faithful, there is no unfairness in giving *res judicata* effect to a judgment against all members of the class even if they have not received notice." *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 256. The class must be "homogeneous without any conflicting interests between the members . . . ." *Id.* It is therefore necessary that there be a sufficient nexus between the claims of the plaintiff and of the class so that the interests of absent class members will be presented at trial. *Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D. 661, 665 (N.D.Cal.1977). In light of the *res judicata* consequences of class actions, vis-à-vis absent class members, there is a duty on the

court to consider carefully the requirement of fair and adequate representation. *Gibson v. Local 40, Supercargoes, Etc.*, 543 F.2d at 1265 n. 8.

■ Defendants essentially restate their objections to what they contend is the atypicality of plaintiffs' claims. But the named plaintiffs have shown that they share with class members an interest in the defendants' employment practices. They exhibit a continuing interest in remedying the types of practices to which they allegedly fell victim. Garcia and Perez seek reinstatement, Perez seeks a promotional transfer; Romero seeks initial employment. As former employees, Perez and Garcia are presumably familiar with defendants' employment practices and free from any possible coercive influence by defendants and should therefore be able to present an intelligent and strongly adverse case against the alleged discriminatory practices. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 247; *Mack v. General Electric Company*, 329 F.Supp. 72, 76 (E.D.Pa.1971). Further, while Perez and Garcia may be found inadequate representatives of a class of job applicants, *Id.*, the fact that Romero is also a named plaintiff ensures adequate representation for both employees and job applicants. *Cf. Dickerson v. United States Steel Corp.*, 439 F.Supp. 55, 61–62 (E.D.Pa.1977).

*Rule 23(b)(2) Certification*

■ Plaintiffs seek to certify this class under Rule 23(b)(2) which is applicable when plaintiff seeks injunctive relief from acts of an employer on grounds applicable to the class. *Sperry Rand Corp. v. Larson*, 554 F.2d 868, 875 (8th Cir. 1977). They request that an affirmative action program be initiated; such a request for injunctive relief falls within the ambit of Rule 23(b)(2). *See Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 256–57 (5th Cir. 1974). Plaintiffs also seek an award of backpay along with reinstatement. Backpay is an important aspect of Title VII

actions, and while it is a form of monetary relief, an award of backpay is equitable in nature. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); 42 U.S.C. § 2000e–5(g). Hence the fact that backpay is sought incident to the claim for injunctive relief will not preclude certification under this section. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 248–53; Advisory Committee's Notes, 39 F.R.D. 98, 102 (1966).

■ Aside from repeating their objections regarding typicality of plaintiffs' claims, and the adequacy of representation, defendants argue that class adjudication is unnecessary because declaratory and injunctive relief, should plaintiffs prevail on the merits, would redound to the benefit of all persons whom plaintiffs seek to represent. But in this circuit, it is clear that a court may not decline to certify a class simply because there is no need for it, if the prerequisites and conditions of Rule 23 have been met. *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976); *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1972).

■ This court has the power to revoke or alter the class action status of this suit at any time before judgment, if it appears during the course of the litigation that this suit should no longer proceed as a class action pursuant to Rule 23. However, at this stage of the litigation, the court concludes that plaintiffs have proposed a definite class whose contours are shaped by defendants' alleged discriminatory employment practices and that the explicit requirements of Rule 23 have been fulfilled. *See Alliance To End Repression v. Rochford, supra.* Rule 23(c)(4)(B) allows the court to divide the class into appropriate subclasses should further discovery indicate that groups within the class have divergent interests or that particular issues are better handled separately. However, the court notes that the fact that relief is sought under two separate statutes, Title VII and

§ 1981, does not in itself require subdivision. *See* 3B J. Moore's Federal Practice ¶ 23.65 at 23–475 (2d ed. 1978).

## VI.

For these reasons, plaintiffs' motions to amend Count I of the complaint and to certify a class are granted. The court orders that this cause proceed as a class action pursuant to Rule 23(a) and (b)(2); the class conditionally certified shall consist of all Latinos who, because of their race, national origin or opposition to defendants' unlawful employment practices have been or are denied equal employment opportunities by the defendants through (1) refusal to consider or hire Latinos who are qualified for various available positions at Rush-Presbyterian-St. Luke's Medical Center, (2) discriminatory assignment of Latino employees, and (3) utilization of discriminatory standards for judging the performance of Latino employees, thus affecting their promotion, assignment and tenure.

Defendants' motions for partial summary judgment are granted as to the statutes of limitations and denied in all other respects. The allegations of Count I will be limited to events occurring not more than 300 days prior to the dates on which Garcia and Perez filed their administrative charges; the allegations of Count II will be limited to events occurring not more than five years prior to the date on which the complaint was filed.

So ordered.